IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No.: 06 C 4165 |
| v. ) | |
| ) | Suzanne B. Conlon, Judge |
| KHALED ABDED-LATIF DUMEISI ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Defendant Khaled Abded-Latif Dumeisi was convicted of acting as an agent of Iraq without prior notification to the Attorney General, conspiracy, and perjury. His conviction was affirmed on appeal, and his petition for writ of *certiorari* was denied. *See United States v. Dumeisi*, 424 F.3d 566 (7th Cir. 2005), *cert. denied*, 126 S. Ct. 1570 (2006). Dumeisi, now *pro se*, collaterally attacks his conviction and sentence pursuant to 28 U.S.C. § 2255, primarily on the ground his trial counsel's assistance was constitutionally ineffective. For the reasons set forth below, Dumeisi's § 2255 motion is denied.

## BACKGROUND

### I. Trial and Sentencing

The appellate court set forth detailed factual findings. *See Dumeisi*, 424 F.3d at 569-574. The facts are drawn from the court's opinion unless otherwise noted. On July 16, 2003, Dumeisi was indicted for acting in the United States as an agent of Iraq, a foreign government, without prior notification to the Attorney General (in violation of 18 U.S.C. § 951(a)); conspiracy to do the same (in violation of 18 U.S.C. § 371); and perjury in an immigration proceeding and before a federal grand jury (in violation of 18 U.S.C. §§ 1621 and 1623). Dumeisi pleaded not guilty.

At trial, the following facts were established: Dumeisi was a native of Palestine who emigrated to the United States in 1993. Sometime thereafter, he began publishing an Arabic language newspaper called *Al-Mahjar*, which primarily contained articles about Middle Eastern politics. Dumeisi drafted some of the newspaper's articles. His articles, and *Al-Mahjar* generally, were favorable to Saddam Hussein and against the Iraqi Opposition. Dumeisi's support for Saddam Hussein came from his belief that Hussein was "the only Arab leader who had unwaveringly supported the Palestinian cause." *Id.* at 570. Dumeisi's stance put him at odds with the Iraqi Opposition and its sympathizers.

In 1996, Dumeisi directed Kawther Al-Katib, one of his employees, to contact the Iraqi Mission to the United Nations ("IMUN"), which served the same role as an Iraqi embassy in the United States. Dumeisi, through Al-Katib, notified the IMUN that *Al-Mahjar* was "at their disposal" and was interested in publishing materials or articles supplied by the organization. *Id.* Thereafter, Dumeisi developed a close relationship with the IMUN. He was a guest in its New York headquarters on several occasions. He also traveled to Iraq for Saddam Hussein's birthday celebration as the IMUN's guest. Dumeisi told Al-Katib he traveled to Iraq through Jordan so his passport would not be stamped with an Iraqi entry visa. Dumeisi said he did this at the direction of the IMUN. He also said his schedule of activities was coordinated by two members of the *Mukhabbarat*, the Iraqi Intelligence Service ("IIS").

Dumeisi told another acquaintance that during his trip to Iraq he met people who were interested in recruiting him to monitor and report the activities of the Iraqi Opposition in the United States. Dumeisi said the IMUN gave him $3,000. He also said the IMUN expected him to receive instructions by telephone every Thursday afternoon. After returning from Iraq, Dumeisi was seen

2

regularly talking on his cell phone on Thursday afternoons. He described the calls as "private and secret." *Id.* In addition, Dumeisi showed Al-Katib a pen that he said could be used as a camera and tape recorder. Dumeisi said he received the pen in Baghdad and used it to spy on an Iraqi Opposition member during a meeting in Illinois. Later, the IMUN gave Dumeisi a computer, fax machine, and articles to be printed in *Al-Mahjar*. In return, Dumeisi created *Al-Mahjar* press identification cards for two IIS officers, which allowed IMUN members to attend meetings that were otherwise inaccessible.

One of the most important pieces of evidence introduced at trial was the "Baghdad file." The file was a collection of IIS documents recovered after the fall of Baghdad in 2003. The file contained a listing of telephone numbers called by Fawzi Al-Shammari, a former Iraqi military general who was considered a possible successor to Saddam Hussein. Al-Shammari created an organization dedicated to overthrowing Hussein and publicly advocated regime change in Iraq. The telephone number list was handwritten by Wafa Zaitawi, a part-time Dumeisi employee and a salesperson for the long-distance telephone service FoneTel. Al-Shammari was a Fone-Tel subscriber. In a conversation between Dumeisi and Zaitawi recorded by the government, Dumeisi did not dispute that Zaitawi provided him a record of Al-Shammari's calls.

Other documents in the Baghdad file linked Dumeisi to the IMUN and IIS. Correspondence between the two organizations indicated Dumeisi was supposed to "exploit his friend who works for a communication company" to achieve the goal of "moving on hostile organizations in Chicago and Detroit, and to monitor the activities of group leaders for the so-called opposition." *Id.* at 572. Related correspondence referred to Dumeisi as "Symbol Sirhan," indicating he was an Iraqi intelligence "source." *Id.* The file also contained a report of an Al-Shammari speech given in

Illinois. The report identified Al-Shammari as a possible successor to Saddam Hussein in Iraq, attached pictures of Al-Shammari, and identified two of his traveling companions. According to Najat Muhammed, a publisher who worked for and shared office space with Dumeisi, three pages of the report were in Dumeisi's handwriting. Tr. at 321 (Jan. 6, 2004).

The government introduced additional documents recovered from searches of Dumeisi's home and office. The government contended a 1996 calender covered with Arabic writing and phone numbers contained information on Dumeisi's IMUN contacts. Dumeisi also possessed a piece of paper containing Arabic words written in two columns of five words each. The government contended the words were code.

Further testimony established that Dumeisi complained to a friend that he was unable to publish his newspaper because his computers had been confiscated by the government. According to the friend, Dumeisi said the IMUN wanted him to gather information on Al-Shammari. Dumeisi related that it "had something to do with phone numbers." *Dumeisi*, 424 F.3d at 573. He also said he passed information to the IMUN "with an indication that Al-Shammari might be the next president of Iraq if Saddam Hussein's regime were overthrown." *Id.*

On January 12, 2004, a jury found Dumeisi guilty on all counts. Although he faced a statutory maximum of ten years imprisonment, the court sentenced Dumeisi to 46 months and a two-year term of supervised release.

## II. The Appeal and Petition for Writ of *Certiorari*

Dumeisi appealed his conviction. Aided by new counsel, he raised six arguments: (1) the Baghdad file was erroneously admitted into evidence as unauthenticated hearsay; (2) the Classified Information Procedures Act was misapplied allowing the government to substitute its summary of

4

classified information for actual information; (3) the Foreign Intelligence Surveillance Act was misapplied regarding his First Amendment-protected activities as a journalist; (4) the court failed to instruct the jury he had a right to publish newspaper articles; (5) the court failed to give a jury instruction regarding conspiracy with diplomatic or consular officers; and (6) the evidence at trial was insufficient as a matter of law. After a detailed discussion of the facts, the appellate court rejected Dumeisi's arguments and affirmed his conviction.

Specific to the sufficiency of the evidence claim, the court summarized the evidence against Dumeisi as follows:

> First of all, the correspondence amongst IIS officials contained in the Baghdad File–the trustworthiness of which we have discussed at length–indicates that Dumeisi received payments from the IIS and that he received directions from that organization (as to how to use Zaitawi, for example). Further evidence that Dumeisi was an "agent" of Iraq is his handwritten report on Al-Shammari's activities in Chicago and the telephone records, which were, drawing all inferences in favor of the government, transferred to someone within the IIS in Iraq. In addition to the Baghdad File, there was evidence that Dumeisi initiated contact with the IMUN and offered to publish articles supplied by them; that he received training and was asked to report on Iraqi Opposition activities in the United States; that he had telephone conferences with someone from the IMUN every Thursday afternoon to receive instructions; that he was given a pen like those used by the IIS that could be used as a camera and a tape recorder; that he printed provocative articles in his paper to learn more about the Opposition; and that he produced false press passes for IMUN employees to facilitate their access to places which they could not, as diplomats, have gone.

*Dumeisi*, 424 F.3d at 581. The court found "there [was] ample evidence that Dumeisi acted knowingly at the behest of the IIS." *Id.*

After his conviction was affirmed, Dumeisi petitioned the Supreme Court for a writ of *certiorari*. He asserted the court of appeals improperly relied on classified evidence to bolster its

5

finding that the Baghdad file was properly authenticated. According to Dumeisi, his rights under the Confrontation Clause were violated. The Supreme Court denied his petition. *See Dumeisi v. United States*, 126 S. Ct. 1570, 1571 (2006).

## ANALYSIS

Dumeisi brings a timely motion under 28 U.S.C. § 2255. He asserts four grounds for relief. The first three advance claims under the Sixth Amendment: his trial counsel provided ineffective assistance by (1) failing to object to "false evidence" that Dumeisi's passport was not stamped with an Iraqi entry visa; (2) failing to call Wafi Zaitawi as a defense witness; and (3) failing to conduct a handwriting analysis so show Dumeisi did not author any documents in the Baghdad file. Dumeisi's fourth ground for relief is that the court sentenced him under the incorrect sentencing guideline.

### I. Section 2255 Standards

Collateral relief under 28 U.S.C. § 2255 allows a person convicted of a federal crime to vacate, set aside, or correct his sentence. Relief is available only in limited circumstances, such as where an error is jurisdictional, of Constitutional magnitude, or there has been a "complete miscarriage of justice." *Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004). If the court determines a constitutional error exists, it "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255. In making the determination, the court must review evidence and draw all reasonable inferences in the light most favorable to the government. *United States v. Galati*, 230 F.3d 254, 258 (7th Cir. 2000); *Carnine v. United States*, 974 F.2d 924, 928 (7th Cir. 1992).

A § 2255 motion is not a substitute for direct appeal. *Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992) (overruled on other grounds by *Castellanos v. United States*, 26 F.3d 717, 719-20 (7th Cir. 1994)). Accordingly, there are three types of issues a § 2255 motion cannot raise: (1) issues raised on direct appeal, absent a showing of changed circumstances; (2) non-constitutional issues that could have been raised on direct appeal, but were not; and (3) constitutional issues not raised on direct appeal, unless there is "cause" for the procedural default and "prejudice" from the failure to appeal. *Id.*

## II. Ineffective Assistance of Counsel Claims

### A. Standards Under *Strickland v. Washington*

An ineffective assistance of counsel claim is properly brought in a § 2255 motion regardless of whether it was raised on appeal.[1] *Massaro v. United States*, 538 U.S. 500, 504 (2003). A defendant must satisfy the two-prong test of *Strickland v. Washington* to prevail on his claim. 466 U.S. 688, 688-94 (1984). The test is "arduous." *United States v. Gilmore*, No. 98 C 1661, 1999 WL 262151, at *5 (N.D. Ill. Apr. 22, 1999) (Kocoras, J.). First, the defendant must show his counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Richardson v. United States*, 379 F.3d 485, 487 (7th Cir. 2004). The errors complained of must be so serious that counsel did not function as "counsel" guaranteed by the Sixth Amendment. *United States v. Holman*, 314 F.3d 837, 839 (7th Cir. 2002). Second, the defendant must prove the errors were prejudicial. *Cooper v. United States*, 378 F.3d 638, 640-41 (7th Cir. 2004). Prejudice is

---

[1]The government incorrectly asserts Dumeisi's ineffective assistance claims are subject to a "cause and prejudice" analysis because they should have been raised on direct appeal. Resp. at 3. *Massaro* precludes this argument and renders portions of the government's statement of the law inapplicable.

established by showing "there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." *Benefiel v. Davis*, 357 F.3d 655, 661 (7th Cir. 2004) (quoting *Strickland*, 466 U.S. at 694).

The court's review of an ineffective assistance claim is "highly deferential" to counsel. *Holman*, 314 F.3d at 840. The "underlying assumption [is] that 'counsel's conduct falls within the wide range of reasonable professional assistance.'" *Id.* (quoting *Strickland*, 466 U.S. at 689). Courts "presume counsel made reasonable strategic choices unless the defendant presents evidence rebutting that presumption." *United States v. Traeger*, 289 F.3d 461, 472 (7th Cir. 2002). It is not the role of the court to second-guess counsel's strategic choices at trial. *See United States v. Williams*, 106 F.3d 1362, 1367 (7th Cir. 1997).

### B. Failure to Object

Dumeisi claims his trial counsel was ineffective for not objecting to Kawther Al-Katib's testimony that Dumeisi told her his passport was not stamped with an Iraqi entry visa. Mot. at 5. Dumeisi asserts that the last page of his passport was stamped with the date and year he entered Iraq. *Id.* According to Dumeisi, his counsel "had full knowledge of such false information" but did not properly object, rendering the trial and verdict "unfair." *Id.* The government is skeptical that Dumeisi's passport was stamped in Iraq. Resp. at 7. The government contends that even if the passport was stamped, trial counsel made a strategic decision to not object because the passport offered further proof of Dumeisi's ties to Iraq during the time he was alleged to be working on behalf of the IIS. *Id.*

Dumeisi does not provide a copy of the passport or any significant details about the alleged entry stamp. There is no way to verify whether the passport was in fact stamped, when it was

purportedly stamped, or where it was stamped. Dumeisi is required to submit evidence that allows the court to determine whether an evidentiary hearing is necessary and the ultimate relief is available. *See Galbraith v. United States*, 313 F.3d 1001, 1009 (7th Cir. 2002). He fails to provide the necessary detail; therefore, the court must deny his claim. *See Marshall v. United States*, No. 04 C 6288, 2005 WL 1563200, at *2 (N.D. Ill. June 27, 2005) (Lefkow, J.) (denying a §2255 motion "in the absence of evidence supporting the bare allegation" of counsel's omission).

Even if Dumeisi could provide evidence his passport was stamped, his counsel's failure to object to Al-Katib's testimony did not fall below an objective standard of reasonableness. First, Dumeisi's counsel challenged the foundation of Al-Katib's testimony. Tr. at 724-57 (Jan. 8, 2004). Al-Katib testified that Dumeisi said he was issued a document at the Iraqi Embassy in Jordan allowing him to enter Iraq without having his passport stamped. *Id.* at 715. This allowed Dumeisi to slip into Iraq undetected by United States authorities. *Id.* Dumeisi's statement to Al-Katib was clearly admissible because it was an admission under Fed. R. Evid. 801(d)(2). *See United States v. Tolliver*, 454 F.3d 660, 665 (7th Cir. 2006).

Further, Dumeisi's counsel cross-examined Al-Katib extensively. Counsel questioned her on a series of issues: the propriety of a journalist contacting the IMUN, Tr. at 728 (Jan. 8, 2004), that she did not actually see Dumeisi use the "spy" pen, *id.* at 743, her personal bias toward Dumeisi, *id.* at 749-50, and her inability to witness Dumeisi's Thursday phone calls because she was busy with another business, *id.* at 745-46. It is presumed Dumeisi's counsel did not cross-examine Al-Katib regarding the entry stamp or attempt to impeach her with Dumeisi's passport for strategic reasons. *See Traeger*, 289 F.3d at 472. This makes sense in light of the testimony. As the government contends, an attempted impeachment of Al-Katib on this issue would only draw attention to and

strengthen Dumeisi's ties to Iraq during the time in question. Moreover, Al-Katib testified that Dumeisi told her his passport was not stamped. Any impeachment of Al-Katib would address the truth of Dumeisi's own statements. The value of the impeachment would be minimal at best. Therefore, counsel's failure to object to Al-Katib's testimony about his passport statements did not violate *Strickland's* performance prong. *See Cooper*, 378 F.3d at 640-41 (denying § 2255 ineffective assistance claim where defendant did not call into question trial counsel's strategic decision not to object to anonymous tip testimony).

### C. Failure to Call Exculpatory Witness

Dumeisi claims his counsel was ineffective for failing to call Wafi Zaitawi as a defense witness. Mot. at 6. According to Dumeisi, he requested that counsel subpoena Zaitawi and was assured she would be a witness. *Id.* at 6-7. Dumeisi contends Zaitawi would have been a credible witness in his defense. *Id.* at 6. In response, the government argues not calling Zaitawi was a sound strategic decision by Dumeisi's counsel because Zaitawi would have faced a damaging cross-examination. Resp. at 8-9.

Again, Dumeisi fails to provide sufficient information to advance his claim. He fails to identify Zaitawi's purported exculpatory testimony. Nor does he explain the basis for his conclusion that Zaitawi's testimony would be credible. He also fails to explain how the verdict would be different if Zaitawi had been called as a witness. Dumeisi even fails to name Zaitawi as the exculpatory witness, requiring the court to glean her identity from vague references in his motion. *Id.* (identified only as the "one who gave a list of phone numbers"). There is also no indication Zaitawi was available to testify at trial and would agree to waive her Fifth Amendment right against self-incrimination. Dumeisi's claim lacks the essential information for the court to grant relief. *See*

*Galbraith*, 313 F.3d at 1009; *United States v. Pregler*, 233 F.3d 1005, 1011 (7th Cir. 2000) (ineffective assistance claim denied where defendant did not offer any evidence that proposed witness would have provided exculpatory information).

Even assuming Dumeisi provided a lengthy recitation of Zaitawi's proposed testimony, his counsel's decision not call Zaitawi as a witness was not objectively unreasonable. The government demonstrated that Zaitawi provided the "leg work" in improperly gathering information on Al-Shammari. The Baghdad file contained a listing of telephone numbers called by Al-Shammari. *Dumeisi*, 424 F.3d at 572. Zaitawi authored the listing. *Id.* She had access to Al-Shammari's phone records because of her employment at FoneTel. *Id.* at 571. During a conversation recorded by the government, Dumeisi did not deny Zaitawi gave him the listing. *Id.* at 573. The government contends Zaitawi also provided Dumeisi with information about Al-Shammari's activities, as well as photographs. Resp. at 9. Dumeisi submitted a report to the ISS incorporating this information, which was found in Baghdad. *Dumeisi*, 424 F.3d at 572. Calling Zaitawi as a witness and making her available for cross-examination, particularly about her actions at Dumeisi's direction, undoubtedly would have hurt Dumeisi's defense. Although there may be a dispute as to whether any favorable testimony by Zaitawi would be outweighed by damaging cross-examination, *Strickland* does not allow this court to second guess counsel's strategic decisions. *See Williams*, 106F.3d at 1367.

### D. Failure to Conduct Handwriting Analysis

Dumeisi argues he was denied effective assistance because his trial counsel failed to conduct a handwriting analysis that would have proven he did not author the "informational report" found in the Baghdad file. Mot. at 8. Dumeisi claims he requested an analysis, but his counsel failed to

obtain one. *Id.* The government argues that the report's probative value did not depend solely on the identity of the author; its value came from its content. Resp. at 9-10. According to the government, the report itself demonstrates Dumeisi was an IIS "source" providing information to Iraq; Dumeisi's handwriting is immaterial. *Id.*

The government's argument is not persuasive. Dumeisi's authorship of the report was an important fact at trial. The report directly linked Dumeisi to the IIS in a way other inculpatory documents did not. It showed that Dumeisi, directly and unfiltered by others, submitted information to the ISS about the Iraqi Opposition. The government discussed the handwritten report in its closing argument. Tr. at 1080 (Jan. 12, 2004). The Court of Appeals also found the evidence compelling, describing the Baghdad file as "[o]ne of the most important pieces of evidence in Dumeisi's trial." *Dumeisi*, 424 F.3d at 571. The appellate court's opinion referred to "Dumeisi's handwritten report" on at least four occasions. *Id.* at 572, 576, 581. The importance of the evidence is further confirmed by Dumeisi's challenge of its introduction at trial, on appeal, and in his petition for *certiorari*. Although the report is probative for many reasons, the court cannot lightly cast aside the fact it was drafted in Dumeisi's handwriting.

However, counsel's decision not to have the handwriting analyzed by an expert was not objectively unreasonable. The government did not rely on a handwriting expert to identify Dumeisi's handwriting. Rather, the government called Najat Muhammed to testify that the first three pages of the report were in Dumeisi's handwriting based on her familiarity with his writing as a former employee. Tr. at 320-21 (Jan. 6, 2004). Dumeisi's counsel vigorously cross-examined Muhammed on the foundation for her testimony. Counsel elicited that Muhammed was not a trained handwriting expert, *id.* at 325, she only reviewed single words or sentences written by Dumeisi, *id.*

12

at 324, she did not actually see Dumeisi write the report, *id.* at 326, and the government may have caused bias on her part by indicating it was trying to prove the report was in Dumeisi's handwriting, *id.* at 326.

This is not a case where counsel ignored a technical issue requiring expert analysis. Counsel simply made a tactical decision to vigorously cross-examine Muhammed in place of offering an expert. This made sense given the government did not offer a handwriting expert. A lawyer's decision not to call an expert witness is a strategic one not generally subject in review. *Valenzuela v. United States*, 261 F. 3d 694, 699-700 (7th Cir. 2001); *see also Lovett v. State*, 627 F.2d 706, 709-10 (5th Cir. 1980) ("failure to have [handwriting] analysis done has not been shown to be the kind of ineffective assistance that requires reversal"). Moreover, Dumeisi offers "nothing but his own protestations of innocence to support [his] allegation" that an expert would have concluded the report was not in his handwriting. *Lovett*, 627 F.2d 710. Dumeisi is required to offer more to show his counsel's performance was objectively unreasonable.

### E. Prejudice to Dumeisi

As set forth above, Dumeisi's three ineffective assistance claims fail because they do not demonstrate his counsel violated *Strickland*'s performance prong. Even if Dumeisi could show his trial counsel's performance was objectively unreasonable, his motion still must be dismissed. The motion fails to offer any evidence he was prejudiced by his counsel's alleged errors. He must meet both prongs in *Strickland* to raise a constitutional claim warranting § 2255 relief. *See Cooper*, 378 F.3d at 640-41.

The Court of Appeals opinion and the trial record reflect ample evidence against Dumeisi: he initiated contact with the IMUN and offered *Al-Mahjar* as a resource for the organization; he

printed provocative articles in *Al-Mahjar* to learn more information about Iraqi Opposition members; he received payments from the IIS and other remuneration from the IMUN, including a computer and fax machine; he traveled to Baghdad as the IMUN's guest; the IIS coordinated his schedule while in Iraq; IIS members approached him in Baghdad and asked him to report on activities of the Iraqi Opposition in the United States; he received secret phone calls on Thursday afternoons, as he said the IIS had instructed him to do; documents recovered in Baghdad showed he was an IIS "source" and took direction from the IIS; those documents showed he provided information regarding the activities Al-Shammari, a possible successor to Saddam Hussein; the documents also showed he acquired a list of phone calls made by Al-Shammari; he acknowledged the documents in a conversation that was recorded by the government; he possessed a pen used by the IIS to record conversations surreptitiously; he said he used the pen to monitor the actions of an Iraqi Opposition member in Illinois; he made *Al-Mahjar* press passes and provided them to IMUN members so they could access meetings; documents recovered in his home listed IIS contact information and contained code words; and he told a number of people he was involved with the IMUN and had passed along information to the organization. *See Dumeisi*, 424 F.3d at 570-574. The evidence overwhelmingly supports Dumeisi's conviction.

Dumeisi's motion offers no evidence that the outcome of the trial would have been different absent the alleged errors of his counsel. At best, Dumeisi alleges that, in hindsight, his attorneys made strategic errors. This court may not second-guess counsel's reasonable strategic decisions. *See Williams*, 106 F.3d at 1367. Therefore, Dumeisi has not demonstrated prejudice and his ineffective assistance claim must fail. *See Strickland*, 466 U.S. at 689.

14

## III. Sentencing Claim

Dumeisi asserts he was unconstitutionally sentenced. He contends the court committed error by sentencing him under the fraud sentencing guideline (2B1.1) because it is inapplicable to his offense of conviction (18 U.S.C. § 951(a)). Mot. at 9. Dumeisi's argument lacks merit. A § 2255 motion is not the proper procedure to challenge a sentencing guideline application. *See Smith v. United States*, No. 04 CV6717, 2006 WL 1005072, at *2 (N.D. Ill. Apr. 17, 2006) (Lindberg, J.). Dumeisi's claim is "not a constitutional one, but simply a claim given the facts of [his] case." *Id.* at *3. Therefore, the sentencing claim is procedurally barred because it was not raised on direct appeal. *See Belford*, 975 F.2d at 313 (a non-constitutional issue that could have been raised on direct appeal, but was not, is barred).

Even if the claim were not barred, it still fails. Dumeisi objects to the application of the fraud guideline but does not identify the guideline the court should have used. Mot. at 9. The court was required to apply the guideline most analogous to Dumeisi's offense of conviction, 18 U.S.C. § 951(a), because the offense was not listed in the guideline manual's statutory index. *See* U.S. SENTENCING GUIDELINES MANUAL § 1B1.2. The court invited counsel's submissions regarding analogous guidelines. Minute Order, Dkt. No. 120 (Mar. 26, 2004); Minute Order, Dkt. No. 122 (Mar. 30, 2004). Dumeisi's counsel suggested the court apply 2B1.1, the fraud guideline, which the court did. Addendum to Objections at 2-3, Dkt. No. 121 (Mar. 29, 2004). Dumeisi cannot now claim error.

## IV. Evidentiary Hearing

Dumeisi does not request an evidentiary hearing. Construing his *pro se* motion liberally as the court is required to do, *Haines v Kerner*, 404 U.S. 519, 520-21 (1972), however, it is assumed

15

he intended to request one. Section 2255 provides a movant is entitled to a hearing unless his motion, files, and records of the case conclusively show he is entitled to no relief. 28 U.S.C. § 2255. As detailed above, Dumeisi's ineffective assistance claims fail to meet *Strickland*'s two-pronged test, and his sentencing claim is procedurally barred. Under these circumstances, no evidentiary hearing is warranted. *See Dugan v. United States*, 18 F.3d 460, 464-65 (7th Cir. 1994) (upholding district court's denial of evidentiary hearing where ineffective assistance claims were plainly without merit); *Galbraith*, 313 F.3d at 1009-10 (no hearing required when petitioner failed to submit sworn affidavits specifying proof of his allegations; bare allegations do not meet the threshold requirement for securing a hearing).

## CONCLUSION

For the reasons set forth above, Dumeisi's motion under 28 U.S.C. § 2255 is denied.

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge

October 17, 2006